## BLACKLEDGE *v.* STATE.

(Division A.   April 7, 1930.)

[127 So. 684.   No. 28398.]

Sam Whitman and **J. L. Thompson**, both of Bay Springs, and **Watkins, Watkins & Eager** and **Hardy R. McGowen**, all of Jackson, for appellant.

Forrest B. Jackson, Assistant Attorney-General, for the state.

Argued orally by **J. L. Thompson**, for appellant, and by **Forrest B. Jackson**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On an indictment for murder, the appellant, Artis Blackledge, was tried, convicted by the jury of manslaughter, and sentenced by the court to serve a term of ten years in the state penitentiary. He appeals here.

The appellant argues many assignments of error, but we shall discuss only one. The appellant asked for, and was refused, a peremptory instruction. We shall not make a detailed statement of the facts.

The state offered evidence showing that on a certain night Anse Hosey, the man alleged to have been killed by Blackledge, was brought home in an automobile and assisted into his dwelling by Levi Gregory, who told Hosey's wife that he did not know how Hosey came by the fatal blow on his head. This occurred about an hour after dark, and later Levi Gregory passed the house in his car and stopped; it was shown by the testimony of the widow, without objection, that he stated that one of the Blackledge boys hit her husband. It was shown by the physician that Hosey's skull was crushed, and it

was further shown that he died the next morning in the hospital.

The deputy sheriff testified that he went to where the homicide is said to have occurred and found a piece of scantling, two by four, in two pieces, part of the break being old and part fresh; and that he found no other evidence of the difficulty. The deputy sheriff said further that a day or two after the appellant was arrested he (Blackledge) admitted to him that he was the "fellow who hit the deceased," and said he did not know whether he hit him with the scantling or not, but that he did hit him with a stick. It was further shown for the state by the sheriff that he went to the scene, and that a number of people were standing there, and the sheriff asked if anybody knew about what had happened there the night before, and the defendant being present made no answer, but the father of the defendant said he (the father) did not know anything about it.

Upon this testimony the state rested. Whereupon the defendant said in his own behalf that the deceased, Hosey, was standing near the road in company with appellant's father and Gregory, Sr., and he heard some cursing and went down to see about it; that the deceased was drunk, staggering about the road, and cursing; that after he got there appellant's mother, his brother about fourteen years old, and Miss Daisy Wade came up; his mother had a flashlight, and Daisy Wade had a lantern; the brother led the way. The little brother said to the deceased: " 'Mr. Anse, shut up your knife and put it in your pocket,' and Mr. Anse Hosey says 'God damn you, I will kill you' and struck at him with his knife, and my mother jumped and jerked my little brother back and says 'don't cut my boy' and he says "God damn you I will kill you,' and made a stroke at her, and my father caught my mother and jerked her back and I says 'don't you cut my mother, Mr. Hosey,' and I saw he wasn't going to stop and they weren't going to have time to get out of the way and I picked up the stick and hit him

and he fell and I turned to help with my mother." Appellant identified the shorter piece of scantling as looking like the one he struck Hosey with. There had never been any quarrel or difficulty between the deceased and appellant. The appellant stated that Hosey did not stop striking at his mother with his knife, and that he reached back, got the stick, and hit him. The deceased was assisted to a car and carried away to his home.

There were six or seven other witnesses who testified substantially to the same effect—Daisy Wade, Sam Gregory, Wilson Blackledge, Vesta Blackledge, James Artis Wade, and Levi Gregory.

Mr. G. W. Hosey, district attorney, a brother of the deceased, testified in rebuttal that he had before him on the morning after the homicide Wilson Blackledge, Vesta Blackledge, the defendant, Artis Blackledge, and John Artis Wade; that on being requested by him to state what had happened down there, but not to tell anything but the truth, they all said: "We weren't there and we know absolutely nothing about it." There were contradictions similar to this of all the witnesses except Mrs. Blackledge.

On rebuttal the state introduced evidence to show that all of these witnesses had been interviewed and had stated that they knew nothing of the difficulty and were not there; that is, all except Mrs. Blackledge, the mother of the appellant. Mrs. Blackledge's statement of how the difficulty occurred was in all essential respects the same as that of her son, the appellant. There is no contradiction then in the record, nor is there any statement, as to how this homicide occurred, except that offered by the appellant, his mother, and the other contradicted witnesses; and that statement shows that at the time the appellant struck the deceased he was defending his mother from a deadly assault with a knife in the hands of a man who was cursing and threatening to cut her. She says she warded off a stroke from the knife at one time with the flashlight, and he continued to strike at her; so that

it appears from this record that the state has absolutely no testimony in contradiction of the statement made by the mother as to how the difficulty occurred. Her testimony, as well as that of the appellant and the other witnesses who were contradicted, made out a case for the appellant to the effect that he was acting in defense of, and protection of, his mother at the time he struck the blow. He did not strike a second blow and there is no physical fact contradicting the mother's statement. The contradiction of the witnesses offered by the state did not in any manner refer to the circumstances of the killing, nor did the state offer any single bit of testimony as to how the difficulty occurred, but its testimony rested upon the contradiction of the witnesses in which it was shown that they declared, shortly after the difficulty, they were not there and did not know anything about it, and later appeared on the witness stand and knew all about it. Mrs. Blackledge's testimony being unimpeached and being supported by the impeached witnesses, and there being no facts or circumstances to contradict it, there is nothing upon which to rest the state's conviction.

It is clear from the undisputed testimony that the appellant acted in defense of his mother and at a time when she was being struck at by the deceased with a knife. Under these circumstances, we must say that the state failed to prove beyond a reasonable doubt that the defendant was guilty of murder or manslaughter. He was entitled to a peremptory instruction of acquittal. See Sides v. State, 96 Miss. 638, 51 So. 465; Houston v. State, 117 Miss. 311, 78 So. 182; Patty v. State, 126 Miss. 94, 88 So. 498; Strahan v. State, 143 Miss. 519, 108 So. 502. In this state the law of self-defense is extended to the defense of the mother who at the moment of the killing is in danger, at the hands of the deceased, of losing her life or suffering great bodily harm. See Little v. State, 87 Miss. 512, 40 So. 165; Staten v. State, 30 Miss. 619.

The conviction in this case cannot stand, and it is manifest that a case cannot be made out against this appellant.

Reversed, and appellant discharged.